Our next case is No. 22-1421, Google v. ITC and Sonos v. ITC, and we've divided this into two separate arguments, and we'll begin with the Google cross-appeal, Mr. Magatel. May it please the Court, Dan Magatel on behalf of Google, with me are Lance Yang and Andrew 896 setup patent because that affects both Google's original products and the redesigns that are an issue in Sonos' appeal. If you agree with us on this issue, it will move both the first issue in Sonos' appeal and the second issue in our appeal, which involves validity of the 896 patent. The claims of the 896 patent require that the controller receive user input indicating that a user wishes to set up the playback device on the network that the controller is using before establishment of the initial communication path, but it was agreed that that user input must be objectively verifiable. That was a stipulation, and it was entered and agreed to by the Commission. There's no real dispute about how the products operate. We've all seen the screens of the brief ad nauseum, and Google's products don't infringe because the screen where the users indicate their network preference occurs after establishment of the accused initial communication path. Now, the Commission said it was before at the device found screen. The problem with that is that that screen just asks, would you like to set up this device? That's all it asks. The user doesn't indicate a Wi-Fi network preference until a couple of screens later, and which is the connect to Wi-Fi screen, that occurs after establishment of the initial communication path, and that says choose a Wi-Fi network you would like to use with your device. That's when the user indicates their preference for what network they want to use to set up. The Commission's ruling was legally wrong because it was based on what the accused controllers were designed to assume. That's the language the ALJ used throughout his analysis. We need to see this as a question of law as opposed to reviewing it for substantial evidence in order for you to prevail on this aspect of your cross-appeal. Yes and no. You could stop and remand on the basis that the Commission's legal analysis was incorrect, that it changed the construction and looked at what the controllers were designed to assume. Construction by eliminating the objective verifiable component? Exactly. But I would say you should go further in reverse. They didn't purport to do that, right? They didn't purport to have done that, right? Well, they didn't purport to have examined the objective verifiable intent of the user. But I think if you look at all four pieces of evidence that Sonos and the Commission have relied on, none of them can satisfy the stipulated construction requiring an indication of the user's objectively verifiable intent. But that part that you just said, we review the Commission's contrary finding for substantial evidence. You would review to see whether what the Commission's analysis was, can it support under the correct claim construction requiring the objectively verifiable user's intent. So it's a hybrid. I'll grant that much. Let's quickly tell us why it would not survive substantial evidence. You've got the user guide, you've got expert testimony, you've got the screens, the highlighting. It sounds like substantial evidence. I'll take all four. The first thing they point to is that the controller stores the name of the app, the network the app is using, after the user hits yes at the device found screen. That's the first thing they rely on. The problem with that is that doesn't indicate any user preference. At most it's some sort of assumption by the person who programmed Google's app. The user has no idea what's going on in the background. You're asked to choose the Wi-Fi network you would like to use with your playback device. Now that's what's asking for the user's input. And there would be no point in asking that if they'd already gotten the input two screens earlier. So what's the next thing they point to? The next thing they point to is at that connect to Wi-Fi screen, it's highlighted. At the first step where the user says whether he or she wants to proceed, there's an indication of what the network is, right? No. No. No. No. Where's the screen? The first screen? The first screen is just you have some beacons going out. Can you tell us in the appendix where we would see the screenshot? I know it's in there several times. Oh, I can get it to you in our brief. I'm sorry I can't translate to it. On page nine of our brief, and that's appendix 60428, it says Google Home Mini found. Would you like to set up this device? Wait. Wait. Wait. Wait. What page of your brief again? Nine of the red brief. Thank you. So yeah, it says, would you like to set up this device? Yeah. And that's based on there's some beacons going around. It says, ah, we found a device. Would you like to set this one up? Yes. It then has to go out and form an initial communication path and find out what Wi-Fi networks that device can see. And it can't form this connect to Wi-Fi screen that's on page 10 until it's done that. That's after you've established the initial communication path. And then at the connect to Wi-Fi screen, it says, choose the Wi-Fi network you would like to use with your Google Home Mini in this case. Okay, but on page 10, it does identify the network, right? At that point, it does. That's after establishment of the initial communication path. And it does, and I'll admit this, that it highlights in blue the network that the controller is currently using. But you have a choice here. You have a choice of, I guess, eight different networks. In my house, it would be probably seven. But in any event, you have a choice of different networks. You don't hit, until you hit next, you haven't indicated whether you want the first one, the second one, the third one, the fourth one, the fifth one. There's simply no indication by the user until you hit next. So what's the third thing? Yeah, the instructions. What about the instructions? Okay, I was going to say, the third screen is, if you differ between what you're using for your phone and what you're using for the speaker, it tells you that and says, do you want to use the two that are on the same network? It has nothing to do with what happened two, three screens before. Let's go to the Get Started webpage. The Get Started webpage was something that was on Google's website before the hearing. It was taken down, but in any event. Where can we see that in the record? The Get Started webpage is. I should have this. Let me look at it in my reply brief, because I've got it there. That's at 50706. Is it set forth in the reply brief? Yes, I quoted it at page 19 of the reply brief. Basically, I'll read it. It says it connects. It recommends. This was never a requirement. This was something that was on a web support page. There's no indication that anyone saw it, used it. It was taken down before the hearing. But in any event, Google did recommend that for ease of doing the connection, you can connect your mobile phone to the Wi-Fi network that you'll use for your speaker. Okay. That shows that Google wanted to make it easy for people to do that. That's the easiest way to go. You don't have to click anything else. You can just take it as, you know, use whatever one's highlighted in blue. But that is not an objectively verifiable user indication. Isn't it probative, though? It's evidence one might reasonably consider in determining whether that first step is an objectively verifiable indication of the user's intent. Not really, and here's why. I mean, for two reasons. One is that the commission didn't rely on it for that. The commission merely relied on it for what Google's intent was in designing its system. The commission never said, and it isn't, evidence of what any individual user preferred to do. There's no evidence that any user actually saw it or used it or followed it. You don't have to say, click, I agree. I certify hereby that I have read the instructions and am following the instructions. There's nothing like that. The only thing the user ever sees is this Wi-Fi screen saying, choose your Wi-Fi network. And that happens undisputedly. That occurs after establishment of the initial communication path. There's no way around that. So basically there are two relevant screens. One is the device selection screen. That occurs before establishment of the initial communication path, and you select your device. And then there's the other screen, the network selection screen, and that undisputedly occurs after establishment of the initial communication path. And that means that neither Google's original products nor the designer rounds infringe. This is limitation 1.6. The issue we deal with in Sonos' cross-appeal deals with limitation 1.8. It's an additional round for non-infringement. So if there are no further questions on that issue, I will turn to the 896 invalidity issue. You better do it quickly because you're running out of time. Okay. The issue there is the initial communication path established by the CD3O prior art. And you had an Ethernet crossover cable, a physical cable that you would connect to the computer and connect the network. And the commission held that that initial communication path, that cable constituted an initial communication path, and it was established too early to count because you hadn't received the first message and the user input yet. The problem was that he stopped there. He never analyzed the alternative paths that Google argued. Google said, well, we don't think that's a communication path, but they said even if that is an initial communication path, there are other initial communication paths. So content that we could find invalidity only that we could at best remand. Correct. Okay. There are two things that Sona says, oh, he didn't actually make a construction. But the only thing he looked at, the only thing he considered was whether it was the first one. So there's two things that could have happened. Either he construed it to mean only the very first one or else he just didn't consider the alternative grounds Google raised. Either way, you've got to send it back. Okay. I think we're out of time. I'll save my nonexistent time for Roboto. We'll give you a couple minutes for Roboto. Mr. Hadorn? Hadorn, yes, sir. May it please the Court, I'd like to start with the 96 patent, the infringement issue, before moving on to the invalidity and if I have time, the 949. For the infringement issue, this is subject to substantial evidence. Here, Your Honor, the Commission found both direct and induced infringement based on the finding that clicking yes on the device found on the screen satisfies the claimed user input. Even though the user doesn't know what the network is? Even though the user does not know it? Well, that's a really good question, Your Honor. At that point, what's supposed to be the finding that the user does is that it's the online instructions that Google made publicly available on its website and the logical inference from that is that then it's the inferences that it's meaning that it's U.S. consumers and potential U.S. consumers would then rely on that, on how to set up the device. Okay, but without that, you have a problem, right? Well, without that, there's still substantial evidence, I would argue. Really? How so? So if you think about what happens when a user clicks yes on the device found screen, what that does, that's an affirmative selection because there's a choice to either set up or skip, right? And if the user clicks yes, set up, that triggers a cascade of steps within the Google Home app. Among those are, the first thing it does, it saves the network on which the controller is operating and then later fetches that to pre-select that same network on the later connect-to-Wi-Fi screen by highlighted in blue. And now what happens at that subsequent connect-to-Wi-Fi screen is that if the user agrees with the pre-selected blue highlighted network and she would click yes, sorry, would click next, and then would then be connected to operate with the controller. If she wants to use a different network, she would switch. Yeah, I understand that. And then what that would do is that triggers a, sorry, Your Honor? I understand that, but it seems to me before you get to that screen, it may be difficult to say that there's an objectively verifiable choice absent the online instructions. Well, for that, Your Honor, I would say if we look at the claim language, the claim language says nothing about a choice. The claim language just says user input indicating that a user wishes to set up a playback device to operate on the secure Wi-Fi. What about the agreed claim construction? Excuse me? What about the agreed claim construction? The agreed claim construction. You agreed that user input means an objectively verifiable indication of the user's desire to use a particular network, correct? Yes, yes, I do. Because, you know, this is something that I came up through in marketing. And in the ID, the AOJ does not adopt a construction that excludes And, indeed, by clicking yes on that device found screen, that generates an electronic signal. That's objectively verifiable. We don't have a dispute about whether to apply objectively verifiable indication, do we? I'm sorry, say that one more time. Everybody here agrees we should apply the objectively verifiable indication. Yes, Your Honor. Okay. You're not fighting that? I'm not fighting that.  If the user selects a network on the connect to Wi-Fi screen that's not blue highlighted and the preselected one chooses another one, an interruption screen comes up. And it pauses setup. Because it's trying to confirm what do you objectively verifiably want to do. Well, I think what that confirms, Your Honor, is that you cannot connect the playback device to use on the computer. You cannot successfully set it up unless they're both on the same network. So that confirms that by clicking yes on the device found screen, the user wishes to set up the playback device to operate with the controller because it has to be on the same network. Where are the online instructions? What page are they in? The online instructions are, that is 47147. That's volume 3.2, Your Honor. 47147? 47147. No, I'm sorry. 50706. 50706. Yes, sir. Which volume is that? Three. So if we take a look at the online instructions, and again, made publicly available for everyone in the world to look at who has an Internet connection. I have this text marked confidential. Knowing that you decided to... That's confidential, that publicly available instruction? That's okay. You keep marking stuff which shouldn't be marked. So if we take a look at the instructions here, Your Honor, the first thing it says, of course, to do is to plug in the playback device. And the very next thing it says to do is to connect your mobile device to the Wi-Fi network that you'll use for your speaker or display. And then after that, it says to launch your Google Home app, which then presents the screens that we're all discussing here. The first screen being the device found screen, where then the user would click yes, and again, that's the objectively verifiable indication, the user input. If I can say, I know I'm running out of time, if I can make a couple points about the invalidity issue, Your Honor. Well, just before you get into that, is this step two here at the bottom, connect your mobile device to the Wi-Fi network that you'll use? They don't know what it is, right, at that point? Or is that referring to the later choice? That's step two, Your Honor. Well, they would know, or they can find out, which network the controller is on. So, for example, if you're trying to set up your speaker with your handheld phone, you can look to see what Wi-Fi network you're on, or what wireless you're on. Is there any evidence in the record that any user ever saw this and followed this instruction? None that I'm aware of, Your Honor. But again, it's at least circumstantial evidence. Isn't it true the Commission relied on this for evidence of what the intent of Google was in designing these screens, and not for what the user's intent was? Well, it's both, Your Honor, because in the ALJ's findings on inducement, it shows that Google does not dispute the additional findings on inducement. On Invalidity, which I know you wanted to get to, it seems to me either the Commission did silently construe the initial path to mean the first ever, which you say the Commission didn't do, or it just failed to address all of Google's arguments. What possible other outcome is there? Well, there's neither, actually. There is a third outcome, presumably, you're going to tell us. Yes, sir. So for the first one, for the Claim Construction, there's no indication whatsoever that the Commission construed initial communication path to mean the first ever communication path. The words first ever don't appear in the ID. But they didn't do that. Why didn't they address all of Google's arguments? But they did address whether layering a UDP and TCP addressing protocols creates a new communication path. If you turn to Appendix 240, what the ALJ does, it agrees with Sonos that the claimed establishing an initial communication path does not require connection with a particular application or on a specific layer of the network stack. And so here what Sonos is referring to is the layering of the UDP and TCP addressing protocols. And so that means that the Commission agreed with Sonos that using those protocols over the Ethernet cable in the CD3O system does not create a new and different communication path over the Ethernet cable. But the Ethernet was only part of their argument, Google's argument, isn't that right? Well, yes, it was. But if you take out the fact if by using an addressing protocol of UDP or TCP, if that doesn't create a new communication path, then we're left with what the communication path is, the plugging in of the Ethernet cable. That's the communication path that's under all of this. And again, Your Honor, that's consistent with the patent too. If you look at Column 10, Appendix 10186, Lines 18 through 19, the patent teaches the rudimentary or the initial communication path may operate over wireless or wired Ethernet protocols. And there's no mention there about operating or being established by switching to addressing protocols such as UDP and TCP. Also in Column 6, this is Appendix 10184, there's a distinction being made between addressing protocols and communication protocols. In Lines 39 through 52, it speaks of addressing protocols and gives specifically TCP as one example. Later on in Column 6, it speaks in Lines 53 through 61, it talks about the communication protocols for wireless and wired network interfaces and gives examples of these protocols. But there's no mention of these UDP and TCP addressing protocols. And I'll also note one last thing, Your Honor, I know I'm at my time, that even CD3O's co-founder, at the hearing, he declined to refer to the UDP and TCP messaging in the CD3O system as being different paths over the Ethernet cable. That's at Appendix 70130. Okay, I think we're out of time. Thank you very much. Mr. Rosenkranz? Good morning, Your Honors. May it please the Court, Josh Rosenkranz representing Sonos. Let me start with the infringement issue and going directly to Judge Stark's question. This is a substantial evidence question. There's only one legal issue that Google has raised, which is the use of this word assume rather than indicates. Now, Judge Dyke asked whether there's an objectively verifiable indication that the user has chosen the network that she is on before that initial path is established, and that is specifically at the device found screen. The answer is yes, for several reasons, but two in particular. First, you asked about the instructions. They are laid out on page 45 of our brief. Yes, it is correct that the Commission described them as instructions that explain what the user interface does and how the system operates. Now, the most important thing to understand about the interaction between the instructions and the code and these interfaces is that they're all designed by the same engineers, and they're designed to communicate, that is the interface, designed to communicate to a user what they're supposed to do, and then to understand what the input means when the user does that. Does the user know that she is on a network at the point at which she presses yes on the device found screen? Of course she does. We all know that. Correct. She has not chosen the network from a list of preferences. But the claim doesn't require her to choose a network from a list of preferences. The claim requires her to be on a network and to indicate, that is to provide a user input, that she wants to add the device to that network. The fact that she can later decide, oh, wait a minute, I chose the wrong network, is neither here nor there for purposes of the infringement analysis, because she's made the choice. This seems to boil down to the question of whether you're right, that she doesn't need to know which network she's on in the first place, or whether the objectively verifiable construction requires that she know which network, right? No, Your Honor. It boils down to a decision whether the commission had substantial evidence supporting the conclusion. No, no, I understand that. But that's the fact finding. And interpreting the claim construction and applying it to the facts, that's the choice. So, correct. On the claim construction question, the issue is whether the claim requires that she know which network, and it requires the user to choose from a list of possible networks, and it doesn't. And Google has never argued that. I don't think it requires choosing from a list of possible networks, but the argument is that it requires the user know what network has been selected. It requires that the user know that she is on a network and that she wants the speaker to join that network. That is all that it requires. Everything else after that is substantial. But she doesn't need to know what network. She does not need to know what network, but is perfectly reasonable for the commission to conclude, and there's substantial evidence supporting the commission's conclusion, that the way this is designed, users generally know which network they're on. When I'm at home, I've got an office network and I've got a home network. I know which one I'm on. And the instructions tell you to do that. Oh, I'm so sorry, Your Honor. Yes. It should not make a difference. Why not? Because for the reasons that you were articulating earlier in oral argument, that the instructions demonstrate how the system was designed, how it was intended to be used, and it is yet more evidence of what it means when you press yes, because Google explained to people what it means when you press yes. I know I'm out of time, but if I may just very briefly address the validity. Thank you, Your Honor. The ALJ did not neglect to decide an issue that Google put on the table before the ALJ at trial.  The argument that Google made was you've got an Ethernet cable that goes from here to there, and the initial communication path does not start until later. They never made the argument that there are two possible communication paths, one of which is the first, the other of which is the initial. They quote from their briefs to the commission on their petition for review. Would you agree if they did point to other things besides the Ethernet that could be the initial communication path, the commission had an obligation to reach those? Yes. If they made the argument, and they will cite to you all these points in their briefs, if you look in their briefs before the ALJ, if you look at those points, every single one of them is about that first argument that I mentioned. Not a single one of them, and I challenge my colleague to read a sentence that says there were two paths, and the infringing one was the second one. They will point to one thing, which is expert testimony about different prior art that uses the word first ever. That's at the bottom of page 25 of their reply brief. That's the only place where anyone ever made an argument that was about first ever, and it was not necessary to the disposition of that issue. Of course, Google never made that argument about CD3O. I think we're out of time. I'd like to start by correcting one factual misapprehension by the commission. Yes, you absolutely can set up the speaker to operate on a different network than the controller is. In fact, that's what happens at that screen. It tells you, oh, you've got a different network that you're using, but you absolutely continue to go on by your very way. It's actually something you can continue to set up the speaker, or else you can go off and do your own work and let your kids play on that speaker. You absolutely can. I think you can find that at 60292 and forward in the record. It needs to know which network, because it wants to set up on the network that the controller is using. By the way, if you take a look at the claim language, the claim language requires that that indication of the user's intent has to come through the app. It can't be going through settings or something else. That's actually part of the claim language in claim one. It specifically requires that you get this through that interface, this GUI. This has to be part of the setup process. Why does the user have to know which network, as opposed to knowing that it has chosen a network? By the claim language, it needs to know that you're choosing an objectively verifiable indication that they want to use the network that the controller is currently using. That's straight out of claim one. You need to know it's that particular network. You may not have to memorize the exact 18 letters of the name, but you need to know it's that particular network. That's exactly what the claim language requires. At pages 24 of our gray brief, we set forth all the places we recited it, including the expert testimony, which is cited at page 59042 and 594. I think if you just look at pages 24 to 26 of our reply brief, it will be the easiest way. We don't have time to walk through it all. If you agree, though, that we raised this argument, and Sonos acknowledged that we raised this argument when we argued it to the Commission, so if you agree that we raised this argument, the CAALJ simply didn't reach it. We need to re-enact. I hope you don't reach it, because I hope you'll find non-infringement. I think we're out of time. Thank you all. The case is submitted. That brings us to the Sonos appeal. Let's start with Mr. Rosenkranz. Your Honors, the inventions at issue in this case revolutionized home video. The ITC found every single one of them valid and infringed, yet Google's knockoffs continue to flood the market. I'm probably not going to be convincing you with cosmic arguments. I'm not making cosmic arguments, but I am making an argument that what the Commission did was to accept 11th hour claim constructions that allowed three of these patents, the products to escape three of the patents. Now, what I'd like to do is spend the bulk of my time on the 896, but I'll start with the 258, because I think it's really important to get it in there, and then just a brief point on the 959. On the 258, the Commission found the redesign non-infringing based upon two elements, represent a clock time, and generate. As to the first, our point is very simple. The claim calls for sending information that represents a clock time, an integer that is assigned to a unique clock time and stored in a lookup table to be plugged into a formula as clock time, represents clock time. It is a proxy for clock time. It's just like saying T sub 1 equals 9 o'clock in zero seconds. And like T sub 1, the integer has no meaning beyond, no meaning that is separate. So this issue is an application of a claim construction that we review for substantial evidence, correct? Well, Your Honor, I think this particular one is debatable. The others are clear claim constructions. This one, I think it is a new claim construction, because what the Commission did was to... Nobody asked for a claim construction on this issue, right? I mean, it's got to be substantial evidence. Well, Your Honor, what the Commission did was to interpret the claim on the fly. But regardless, there is no dispute about how these clocks work. There is no dispute about how clock time... It seems to me that there is substantial evidence to support the view that you are articulating, but there is also substantial evidence to support the rejection of that and to go with Google's view. Do you have an argument against that? Yes, we do have an argument against that. There is no substantial evidence that an integer that is assigned to a time, the time of a clock, does not represent the clock time. An expert said it, but it is simply not true. As a matter of substantial evidence, that cannot be accepted as a legitimate way to apply the term represents. And just to complete the answer, the extra limitations were added at page 95 and in particular 95 note 17. The Commission said, quote, because the incrementing counter is an incrementing integer... I'm sorry, yes, this one. Because the incrementing counter is an incrementing integer that goes up by one, it is not information representing a time value and thus cannot be the claimed clock time information. That's the Commission reinterpreting the word represents. But let me turn to the generates point. The Commission's ruling on generates was based on two explicit claim constructions. They are hidden, but they are explicit. They are found at page 96, notes 19 and 20, where the Commission in note 19 rejected our position that the claim language does not require the clock time information to be generated by the transmitting player's device clock. And then at note 20, the Commission also rejected our position that, quote, the construction for clock time information allows it to be generated by a component that takes an input from a device clock. Either one of them, if wrong, is reversible error and they are both wrong. To start with the first, nothing in the claim requires that the integer had to be generated by the leader's device clock. The first zone player has a device clock, has to have a device clock that is configured to generate clock time information for the first zone player. Google speakers most certainly do that. But nothing in the claim says that the first zone player's device clock must be the source of the clock time information mentioned way down later. When the inventors wanted to do that, as they did in claim 16, they said it explicitly. It recites that the transmitted clock time information is, quote, clock time information for the first zone player generated by a device clock of the first zone player. And then the holding, which is the independent ruling and an independent basis for reversal, the claim construction that a device clock must act alone in generating the clock time information. The simple point to make there is that the spec explicitly points to a place, which is the DAT clock, where the time clock information is translated by a component other than the device clock. Now if I may turn to the, unless there are questions on the 258, let me turn to the 896. Yeah, on the 896, by the way, I believe your friend on the other side started off the morning by saying if we agree with him on his 896 cross-appeal, your appeal is moot on the 896. Just on the 896. Yes, that is correct, Your Honor. So the 896 claim construction issue is about the phrase, at least a second message containing network configuration parameters. So there are messages and there are contents, and everyone agrees on what has to be contained. Two network configuration parameters, an identifier and a key. And everyone agrees where they have to be contained in, quote, at least a second message. Which means one message or multiple messages. If the claim had said multiple messages containing network configuration parameters, it would be clear that each message does not have to contain each of the two items. It would be enough that they collectively contain them. And that is exactly what this claim means. Obviously, if there is only one message, the two parameters have to be in the message. But if there are multiple messages, then the parameters can be distributed among the messages and don't have to be within each individual message. Plain English resolves this in our favor, but so do the cases that this Court has decided long ago, 10 years ago, 01 communique and the more recent cases. This claim has the structure of the claims that were at issue in 01 communique, in Nisera, and in the first half of Convolve, and lacks the antecedent structure that prohibited distribution in Finjan, Salazar, and the other half of Convolve. The antecedent cases decided, defined functionality over several clauses, each one adding additional functions by saying, first, A computer, and then, B computer does B, B computer does C, B computer does D, and so forth. The repetition of B is what led the Court in those cases to say that there was no distribution allowed, but we don't have that here. And Finjan reconciles all of the cases. It distinguishes 01 communique on exactly that ground. Thank you, Your Honor. All right, we'll give you two minutes for a moment, Mr. Hadhorn. May it please the Court, I will begin with the 258 Patent to Track Services Council's ordering. So here at issue are two independent non-infringement findings, and for Sonos to prevail, it must show that both findings lack substantial evidence. First, that the integer is not the claimed clock time information, and the second, that the integer is not generated by the device clock. For the first issue, it's important to point out that the parties agreed below how to construe clock time information. It's information representing a time value indicated by a device's clock that was agreed to, that was stipulated to, and Sonos should be held to that. Did the Commission take a view on that construction? It just adopted it. It was agreed to prior to Markman, and the ALJ adopted it. I'm not sure that I understand what the word representing means. Well, that's a good question, Your Honor. I know what it doesn't mean. It doesn't mean the integer here in this case is representing clock time information. Because here, the clock time, the redesign's integer, what it is, it's generated by a separate component, the time sync requester, and it's generated every time a packet is sent to the follower. So it's not based on time. I understand what happens. I'm just not clear what representing means. I guess it could mean two different things. It could mean clock time information, or it could mean something to the circuit. Well, yes, Your Honor. If it represents anything in this case, it's the number of the packet that's sent out, because that's what it tracks. Whenever someone requests, say, for example, a song to be played, a packet is sent to the follower, and that packet has an integer attached to it, to use layman's terms. So it might be number 74, and then you'll request a song to be played later on, and it'll be number 75. So if it represents anything, it's just the packet number, and that's a finding in the… It is associated with a lookup table that keeps track of the time that it was sent. Well, yes, Your Honor, that's true, but that lookup table is with the leader device, and that lookup table is reserved there. It's never sent to the follower device. And also, in generating that integer, Your Honor, it doesn't take into account the clock time. Again, it's just solely based on the packet number, so it's not as if… And this gets into the second alleged claim construction error here about whether the device clock working in tandem somehow with the time sync requester can generate this clock time, this alleged clock time information. But that just doesn't happen. Perhaps your argument is that the receiving clock or whatever it is has to know, has to have a way of figuring out what the clock time is, and that while it receives the integer, it doesn't have access to the lookup table. Well, while that's true, it's not, you know, it's not necessary to win, but that's exactly true, Your Honor. It has no access to that lookup table. It's reserved. That lookup table is always in the leader device in Google's product, and it's never sent there. So there's no way… So it's not… So this gets into the cases cited by Sonos here, where, for example, on a car dashboard, there is a light of a tire. It's a symbol of a tire, and the case law, this is Waseca, it says, well, when that light goes on, it does represent something because it symbolizes a low tire pressure, even though it doesn't indicate the precise PSI of the air pressure within that tire. But if you look at our case here, there's nothing, that clock time information, that integer that's transmitted to the follower, it doesn't symbolize any time whatsoever. There were no units of measure attached to it, minutes, seconds, hours. It's just an incrementing integer, and that's it. I see I'm running low on time, so I'll just go right to the 896 unless there's any other questions. Go ahead. So here, the 896, the commission correctly construed the second message limitation. What Sonos is trying to do here is entirely rewrite the claim, which is improper. It's trying to read it as one or more second messages that collectively contain those messages, but the word collectively is not in the claim, and there's no support in the specification to read the claim in that manner. Whereas the commission's construction, there is support there. It's the set net power message taught in the specification, and that's as represented in Figure 3B and described in Columns 13 and 14. And also, as far as the cases that, I know I'm over my time, Your Honors, but as far as the cases, I know that Sonos' counsel talks about 01 communique. Okay, I think we're familiar with the cases, so I think we're about out of time. Okay. Thank you. Thank you very much. Mr. Bagatelle. I'm happy to talk about either the 896 or the 258. Do Your Honors have a preference? You can use your time. Okay. Well, why don't I start where we left off with the 896. The problem is that Google's redesigned controllers send the two required network configuration parameters in different messages, and the patent always talks about them as a package. The only issue here is literal infringement. Sonos made a DOE argument at the commission level. They lost, so this is really only a question of what the claims literally require, and every time that it refers to these parameters, it refers to them as a group, both in the claims and in the figures. It's figure 3B. We think the plain language is certainly in our favor. If you tell a friend that you plan to give her at least a book involving women in science, you're going to send her a book or two that involves women and science, and you have to have both. These things are going together. They are one single thing. That's what you need to do. The analogies get more confusing. Well, I actually really like the dog that rolls over and veggies sticks out of Varma. I have to say that's my all-time favorite, and I think it really does apply here. But as you said, you've read the cases, and I don't. You have a whole volume of 28 jail letters, and I don't intend to do that. But I do think that we have both the claim language in our favor, the specification in our favor, and the sports precedent in our favor. But even if it came down to some sort of tiebreaker, you go back to the general rule that if the specification supports a narrower construction, you go with a narrower construction. That's the athletic alternatives line of cases that this court has had since the 1990s. It's the tennis racket case from the 1990s. Briefly on the 258, there are two issues, first of which is entirely an issue of fact. It's the application of the claim construction. If you get the 22nd, if you have an integer that's 22, it means it's the 22nd clock sync request. It does not indicate 22 seconds after midnight. It does not indicate 22 milliseconds after any particular time, as I think has been pointed out. The clock time information has to be sent to the other device. The only thing that's sent to them is the number 22. It doesn't need it. The leader has access to it because you need to correlate it. If the receiving had access to the lookup table, you'd probably lose, right? No, but for different reasons. It's partly because the other reason would be generated by a device clock. But remember, you've got this stipulated construction. The time information has to come from the device clock. And we have 17.2 that says the first zone player must have a device clock configured to generate clock time for the first zone player. Well, it doesn't say that about the second zone player, but the accused zone player being the leader is the first zone player. So it has to come from a device clock, and it simply doesn't. It comes from a time sync requester. It just generates an integer. Only later on can you possibly correlate it with the clock time, and that's just simply not what the patent had in mind. The patent had in mind sending clock time information from either the first to the second or the second to the first. We simply don't send clock time information. It doesn't represent a particular clock time, and it doesn't come from a clock time generator. So for two reasons. Thank you. Mr. Rosenkranz, two minutes. So on the 896, Judge Dyke, I completely agree with the way you are thinking about this integer, and I would say that if the integer is clock time information for the reasons that we talked about, because it's correlated with a clock time, then it is clock time information without regard to whether the recipient knows what it means. It's still clock time information, and I know that analogies are not always helpful, but if a messenger is sent with the time to start an ambush, that is clock time information without regard to whether the messenger understands what's in the message or it's coded. Now, the Commission says that the claim doesn't say collectively, and I agree. The claim also doesn't say each, and collectively was not in claims in Nisera and in Convolve, which went our way, or in O1 Communique. On the 258, the time sync requester, yes, it generates integers. But it generates integers that are immediately indexed to a clock time that happens before it is sent, so it is clock time information because it is referenced, because it is indexed to a particular clock time. If there are no further questions, I thank the Court for its attention, and for all of these reasons, the judgment, the Commission's ruling should be reversed.